UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA ALVAREZ-GARCIA,<br><br>    Plaintiff,<br><br>      v.<br><br>LABORATORY CORPORATION OF AMERICA HOLDINGS,<br><br>    Defendant. | Case No. 16-cv-02395-SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 20, 22, 24 |

On September 9, 2016, the Court held a hearing on defendant's motion to dismiss the first cause of action and portions of the fourth, fifth, sixth, seventh, and eighth causes of action. For the reasons set forth below, the Court GRANTS defendant's motion without leave to amend.

**BACKGROUND**

I.  **This Lawsuit**

Plaintiff Jessica Alvarez-Garcia ("Garcia") filed this lawsuit in Alameda County Superior Court on April 5, 2016 seeking damages and injunctive relief against defendant Laboratory Corporation of America Holdings ("LabCorp") in connection with the termination of her employment with LabCorp. The First Amended Complaint ("FAC") alleges the following causes of action: (1) wrongful discharge in violation of public policy; (2) wrongful discharge in violation of public policy − wage and hour complaints; (3) failure to pay overtime compensation in violation of the Fair Labor Standards Act; (4) failure to pay meal period compensation in violation of California law; (5) failure to provide accurate itemized wage statements; (6) failure to provide meal periods; (7) failure to compensate for all hours worked; (8) late pay and waiting time

penalties in connection with defendant's failure to pay overtime wages and meal period premiums; (9) failure to accommodate; (10) intentional infliction of emotional distress; (11) negligence; (12) unfair business practices; and (13) civil penalties pursuant to the California Private Attorneys General Act. FAC at ¶¶ 81-116. Defendant removed the case to this Court on May 2, 2016. Dkt. No. 1.

Plaintiff began working for LabCorp in 2008 as a phlebotomist and was later promoted to lead phlebotomist in or around 2011. FAC at ¶ 9. Plaintiff alleges that following the hire of her supervisor Tammie Quinn ("Quinn") in 2015, plaintiff was assigned longer working hours. *Id*. at ¶¶ 16, 19. Further, plaintiff alleges that she used her own vehicle on the clock and defendant "failed to properly reimburse [plaintiff] for mileage to and from [LabCorp] facilities," underpaid her after "not properly accounting for [plaintiff's] time worked," "repeatedly denied [plaintiff and other employees] meal periods," and "denied holiday pay when working on holidays, and . . . denied overtime and regular pay for regular and overtime hours worked." *Id*. at ¶¶ 21-22, 24-25, 28, 32.

Plaintiff also alleges that her employment with LabCorp was terminated after she publicly expressed support for unionization. In May 2015, the United Food and Commercial Workers ("UFCW") began union drives in Central and Northern California to unionize LabCorp phlebotomists. *Id*. at ¶ 33. In or around late July 2015, plaintiff attended an informational meeting, where plaintiff and other LabCorp employees "were informed about the UFCW union drive by individuals believed to be employees of LabCorp." *Id*. at ¶ 34. Plaintiff "raised her hand and asked questions of the representative during and after the UFCW presentation, including several questions about the benefits of unionization." *Id*. at ¶ 35. Plaintiff "was receptive to the idea of better pay and working conditions for her and the other LabCorp employees." *Id*.

The FAC alleges that in or around late July and early August of 2015, LabCorp management organized at least two meetings in the Bay Area with LabCorp phlebotomists to dissuade them from joining the UFCW. *Id*. ¶ 37. At one of these meetings, on or around August 10, 2015, plaintiff "voiced skepticism about LabCorp's sudden commitment to the welfare of its employees and described some of the problems she had been having with her supervisor, stating

that she and other employees were treated in a disrespectful manner, that she was constantly refused days off, and that she was overworked." *Id*. at ¶ 39. According to the FAC, "GARCIA was one of the few employees who spoke out at the ALAMEDA LABCORP PRESENTATION in support of the UFCW." *Id*. Plaintiff "stated her concerns about what she perceived to be the poor treatment of LabCorp phlebotomists" and "also publicly questioned whether LabCorp management was committed to following through on its promises of better working conditions for LabCorp phlebotomists." *Id*. at ¶ 84.

Plaintiff alleges that as a result, her name was placed on an "employee blacklist." *Id*. at ¶ 46. Plaintiff alleges that "most, if not all, LabCorp employees whose names appeared on the employee blacklist were terminated by LabCorp soon after being added to the list" because "they were suspected of either supporting unionization or because they promoted better working conditions." *Id*. at ¶ 47. Plaintiff further alleges that after expressing her views at the presentation, LabCorp management "initiated a campaign of bullying, harassment, and intimidation against [plaintiff] with the intent of firing her because she had complained to management about the poor working conditions for herself and other LabCorp employees." *Id*. at ¶ 48. On September 24, 2015, plaintiff was summoned into Quinn's office and questioned about the activity on her timecard, at which time she was put on leave pending an investigation into timecard fraud. *Id*. at ¶¶ 69-71. On or around October 15, 2015, plaintiff was informed that her position was terminated. *Id*. at ¶ 76.

II.   ***Andres v. Laboratory Corp. of America*, Case No. 13-CV-8773-GW (C.D. Cal.)**

On June 6, 2013, plaintiffs Jemuel Andres and Mark Takahashi brought a class action suit against LabCorp in the Los Angeles Superior Court (the "Andres Lawsuit"). Request for Judicial Notice Ex. 1 at 12.[1] On November 27, 2013, LabCorp removed the action to the United States District Court for the Central District of California. *Id*. In their operative Third Amended Complaint, plaintiffs alleged that LabCorp violated California state labor laws due to its alleged failure to, among other things, (1) pay overtime wages; (2) provide meal and rest periods; (3)

---

[1] The Court GRANTS defendant's request for judicial notice.

1  timely pay wages during employment; (4) timely pay wages upon discharge or termination of
2  employment; and (5) provide accurate, itemized wage statements. *Id*.
3  On October 30, 2015, the court presiding over *Andres* gave final approval to a class action
4  settlement in that case and entered judgment for the class defined as closing December 14, 2014.
5  *Id*. Ex. 4. The settlement agreement approved by the court included the following class members:

> All persons employed by either Defendants or their subsidiaries in the State of California as couriers or phlebotomists at any time from: (i) June 6, 2009 to April 16, 2012 ("Pre-*Brinker* Subclass" or "Pre-*Brinker* Subclass Members"); and (ii) April 17, 2012 to December 14, 2014 ("Post-*Brinker* Subclass" or "Post-*Brinker* Subclass Members").

*Id*. at 3:2-6. The "Joint Stipulation of Class Action Settlement and Release" and "Amendment to the Joint Stipulation of Class Action Settlement and Release" together provide the relevant terms of the settlement in the *Andres* lawsuit. The "Released Claims" are expressly defined to mean "all wage and hour claims, rights, demands, liabilities and causes of action of every nature and description related to the claims litigated in the [*Andres* lawsuit] against Defendants [LabCorp and its subsidiary] in any complaint in this Action," and specifically reference California Labor Code sections 201, 202, 203, 221, 226, 226.7, 510, 512, 1194, 1197, 1197.1, and 1198. *Id*. Ex. 2 (Joint Stip. Class Action Settlement and Release 5:25–6:24, ¶ 25). The order granting final approval expressly provided that the court "shall retain exclusive and continuing jurisdiction over the above-captioned action and the parties, including all Class Members, for purposes of enforcing the terms of the Judgment." *Id*. Ex. 4 at 4:12–14.

**LEGAL STANDARDS**

**I.   Federal Rule of Civil Procedure 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. Fed. R. Civ. Pro. 12(b)(1). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citation omitted). "In resolving a Rule 12(b)(1)

4

*factual* attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *In re Digimarc Corp. Derivative Litigation*, 549 F.3d 1223, 1236 (9th Cir. 2008) (citation and internal brackets omitted). A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When the complaint is challenged for lack of subject matter jurisdiction on its face, all material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). In deciding a Rule 12(b)(1) motion, which mounts a factual attack on jurisdiction, "no presumption of truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Thornhill Pub. Co. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (quoting *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

## II.     Federal Rule of Civil Procedure 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id*. (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679.

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in

the complaint, and draw all reasonable inferences in favor of the plaintiff. *See al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). As a general rule, the Court may not consider any materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). However, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "matters of public record," such as prior court proceedings, without thereby transforming the motion into a motion for summary judgment. *Id*. at 688–89. If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

Defendant moves to dismiss plaintiff's first, fourth, fifth, sixth, seventh, and eighth causes of action. Defendant seeks to dismiss plaintiff's first cause of action for lack of subject matter jurisdiction, on the ground that plaintiff's allegation that she was terminated for her participation in union activity is preempted by the National Labor Relations Act ("NLRA"). Defendant also seeks to dismiss portions of plaintiff's fourth, fifth, sixth, seventh, and eighth causes of action, on the ground that any alleged wage and hour violations predating December 15, 2014 are barred by *res judicata* due to a final judgment in a prior lawsuit between plaintiff (as a class member) and defendant.

### I.      First Cause of Action

Defendant seeks to dismiss plaintiff's first cause of action for wrongful discharge as preempted by the NLRA. Defendant argues that plaintiff's claim is within the exclusive jurisdiction of the NLRB and thus cannot be litigated in this Court. Defendant further argues that

6

even if there were no jurisdictional bar, plaintiff could not state a valid claim because she has failed to exhaust the mandatory pre-filing administrative remedies required by the NLRA.

Plaintiff argues that her single act of speaking out at a LabCorp meeting does not qualify as "concerted activity" within the scope of the NLRA. Plaintiff further argues that preemption only applies to union members, and thus that her claim is not preempted because neither she nor any of her colleagues were part of a collective bargaining unit.

Section 7 of the NLRA is codified at 29 U.S.C. § 157 and provides:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

Activities prohibited by Section 8 of the NLRA are codified at 29 U.S.C. § 158. Subdivision 8(a)(1) makes it unlawful for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157." Subdivision 8(a)(3) provides that it is unlawful for an employer "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization."

The Supreme Court has held that there are two types of preemption under the NLRA. *Chamber of Commerce of the United States v. Brown*, 554 U.S. 60, 65 (2008). *Garmon* preemption precludes state interference with the National Labor Relations Board's ("NLRB") interpretation and enforcement of the regulatory scheme established by the NLRA. *Id.*[2] A judicial remedy falls within the scope of *Garmon* preemption when the alleged claim encompasses activities that are at least arguably protected by Section 7 or arguably prohibited by Section 8 of the statute. *Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1268 (9th Cir. 1994).

To be engaged in "concerted activity" under Section 7 of the NLRA, an employee must act "with or on behalf of other employees, and not solely by and on behalf of the . . . employee

---

[2] The second kind of NLRA preemption, *Machinists* preemption, forbids the NLRB and the States from regulating conduct that Congress intended to be unregulated and left to the control of the free play of economic forces. *Id. Machinists* preemption is not implicated in this case.

7

himself." *NLRB v. Mike Yurosek & Son, Inc.*, 53 F.3d 261, 264 (9th Cir. 1995) (quoting *Pacific Electricord Co. v. NLRB*, 361 F.2d 310 (9th Cir. 1966)). The Act does not require that "employees combine with one another in any particular way." *Id*. (quoting *NLRB v. City Disposal Sys., Inc.,* 465 U.S. 822, 835 (1984)). Where there is no evidence that an employee's complaint was made for the purpose of mutually aiding and protecting any employees other than himself, that employee has not engaged in concerted activity. *See N.L.R.B. v. C & I Air Conditioning, Inc.*, 486 F.2d 977 (9th Cir. 1973). Section 7 defines both joining and assisting labor organizations as concerted activities. *City Disposal Systems,* 465 U.S. at 831.

Plaintiff argues that when she spoke out at the LabCorp meeting she did so only on her own behalf, and that "[t]here are no allegations that Plaintiff lent her support for unionization in any way, through conduct or words, in any forum whatsoever." Opp'n at 6:5-9. However, the allegations of the FAC show otherwise. Plaintiff alleges that at the July 2015 meeting about UFCW unionization, plaintiff "asked several questions about the benefits of unionization," and that plaintiff "was receptive to the idea of better pay and working conditions for her and the other LabCorp employees." FAC at ¶ 35. The FAC also alleges that at the August 10, 2015 meeting, plaintiff "stated her concerns about what she perceived to be the poor treatment of LabCorp phlebotomists" and "also publicly questioned whether LabCorp management was committed to following through on its promises of better working conditions for LabCorp phlebotomists." *Id*. at ¶ 84. In addition, the FAC alleges that plaintiff "was one of the few employees who spoke out at the ALAMEDA LABCORP PRESENTATION in support of the UFCW." *Id*. at ¶ 39.

Thus, the FAC alleges that plaintiff not only complained about her own working conditions, but that she also stated her concerns about the poor treatment of other phlebotomists, and that she spoke out in favor of unionization. Plaintiff's allegations demonstrate that she acted "with or on behalf of other employees, and not solely by and on behalf of the . . . employee himself." *Yurosek & Son, Inc*., 53 F.3d at 264 (holding that four employees who protested reduction in hours and then later refused a contradictory order to work longer hours engaged in concerted activity). The FAC alleges that "[i]n response to GARCIA's exercise of her right to free speech," LabCorp retaliated against her by *inter alia*, putting her on a "blacklist," harassing her,

8

and ultimately terminating her. These allegations bring plaintiff's first cause of action within the scope of NLRA preemption. "[A]ny federal or state claim for wrongful discharge based on union activity is preempted by NLRA §§ 7 and 8." *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1061 (9th Cir. 1989) (holding the plaintiffs' claim that they were wrongfully terminated for participating in union strike was preempted and within exclusive jurisdiction of NLRB).

Plaintiff also suggests that her first cause of action is not preempted because plaintiff is not a union member. However, "[a] discharge of a non-union employee because of a . . . belief that [she] was sympathetic to, or active in, a union violates (sections 8(a)(1) and 8(a)(3)) [of the NLRA]." *Signal Oil & Gas Co. v. N.L.R.B.*, 390 F.2d 338, 342 (9th Cir. 1968) (internal quotation marks and citation omitted); *see also* 29 U.S.C. § 158(a)(3) (providing that it is unlawful for an employer "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization."). Plaintiff alleges that during an August 2015 meeting, LabCorp attempted to dissuade its phlebotomists from unionizing, and that most, if not all, LabCorp employees whose names appeared on the employee blacklist were terminated by LabCorp solely because they were suspected of supporting unionization. *Id*. at ¶¶ 38, 46. Thus, LabCorp's alleged attempt to dissuade unionization also falls within the ambit of Section 8 of the NRLA.

In light of the preemption finding, the Court finds it unnecessary to address defendant's arguments about the administrative statute of limitations issue.[3]

---

[3] Plaintiff's counsel has filed a declaration stating that he filed a charge with the NLRB and that on May 2, 2016, he and plaintiff met with Judy Chang, a field attorney at Region 32 of the NLRB in Oakland. Lightman Decl. at ¶ 3. Mr. Lightman states in his declaration that after an interview with plaintiff, Chang advised plaintiff and Mr. Lightman that the NLRB was "unlikely to prosecute the charge because there was insufficient evidence that [plaintiff] had engaged in concerted activity or that she had ever supported unionization." *Id*. at ¶ 4. In response to this meeting, plaintiff's attorney withdrew her NLRB charge. *Id*. at ¶ 5.

Defendant objects to the Lightman declaration on numerous grounds. Defendant also argues that even if the Court took the statements in the Lightman declaration as true, the FAC nevertheless alleges that plaintiff engaged in concerted activity under the NLRA. The Court agrees, and finds that the Lightman declaration does not alter the Court's analysis that based upon the allegations of the FAC, plaintiff's first cause of action for wrongful termination is preempted by the NLRA.

9

## II. Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action

Defendant also seeks to dismiss plaintiffs' wage and hour claims under her fourth, fifth, sixth, seventh, and eighth causes of action to the extent they arose prior to December 15, 2014. Defendant argues that any alleged wage and hour violations predating December 15, 2014 have already been fully adjudicated based on the class settlement in *Andres v. Laboratory Corp. of America*, Case No. 13-cv-8774-GW. Defendant states that because plaintiff is a class member in *Andres* and she did not opt-out of that settlement, plaintiff cannot pursue in this case the portions of her state wage and hour claims that are covered and released by the *Andres* settlement

Plaintiff does not dispute that she is a member of the *Andres* class, nor does she dispute that she seeks to litigate claims that were resolved in *Andres*. At the hearing on defendant's motion, plaintiff's counsel stated that plaintiff received notice of the *Andres* settlement, that plaintiff did not opt-out, and that plaintiff did not file an objection or a claim.[4] However, plaintiff argues that her claims in this case should not be barred because the *Andres* settlement was unfair. Plaintiff raises numerous challenges to the *Andres* settlement, including that the absent class members did not have adequate representation, that the release of claims was too broad, and that the net class settlement amount is "grossly inadequate." Plaintiff requests this Court to make a finding that the *Andres* settlement violated plaintiff's due process rights and that the *Andres* settlement should be set aside to permit plaintiff's claims may proceed.

The Court concludes that plaintiff's fourth, fifth, sixth, seventh, and eighth causes of action are barred by the *Andres* settlement to the extent those claims allege violations prior to December 15, 2014. Plaintiff does not cite any authority for the proposition that this Court can review plaintiff's claim that her due process rights were violated by the *Andres* settlement, given that she was a member of the *Andres* class, she received notice, she did not opt out and she neither objected nor filed a claim. As noted *supra*, the *Andres* court has retained jurisdiction over the parties and the class members to enforce the terms of the settlement. The case cited by plaintiff, *Valdez v. Neil Jones Food Co.*, No. CV-13-00519-AWI-SAB, 2014 WL 3940558 (E.D. Cal. Aug.

---

[4] Counsel also stated that plaintiff had filed a copy of the *Andres* notice as an exhibit in this case. The Court was unable to locate any such exhibit.

11, 2014), is inapposite, as that case did not involve a collateral attack on a settlement in a different action; rather, the *Valdez* court denied the plaintiff's motion for preliminary approval of the class action settlement in that case. If plaintiff wishes to set aside the *Andres* settlement in order to pursue claims that were released by that settlement, plaintiff must seek appropriate relief from the *Andres* court.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion to dismiss plaintiff's first cause of action, and the fourth, fifth, sixth, seventh, and eighth causes of action to the extent those causes of action allege violations prior to December 14, 2014.

**IT IS SO ORDERED**.

Dated: September 13, 2016

SUSAN ILLSTON
United States District Judge